This is an action for the recovery of damages for personal injuries sustained by plaintiff while in the defendant's employment. It is admitted that defendant corporation was, at the time of the accident, "operating its railroad in carrying logs for mill purposes." Plaintiff testified that he was employed by defendant to oil cars, number cars, and change switches. That he was working under the direction of Mr. Ferrall, who was general superintendent, employed plaintiff, managed and directed all the work. At the time of injury plaintiff had been in defendant's employment twelve or fourteen days, was inexperienced in railroad work. Log-train No. 1 was coming in; plaintiff had been oiling the car; Ferrall told him to put the load on the sidetrack — there were three other loaded cars there. When the train came in plaintiff *Page 55 
changed the switch and started back; Ferrall said that there was no pin in that car, to get one out of the rear car and put it in there. As he was trying to do so, he got mashed. Ferrall told plaintiff to get the pin out of the rear car and come and put it in the one which was backing up. That he tried to do so, but was hurt before he could put it in. Was in the act of putting it in, the car was moving back, the logs extended beyond the end of the car. The brace that held up the draw-heads was broken, and one was dropped down, (41) leaving it so that the other draw-head would pass until it struck the pin. They lapped so that one would run into and strike the pin, and that caused the cars to come together. The logs were not loaded even; some extended further over end of car than others, "two feet, or something like that." Plaintiff did not notice whether they were properly loaded until after he was injured. He says: "The time the car was up there, it was so soon on me that I did not have time to get out. I attempted to get back, but did not have time to do so before it was on me. I saw that the coupling was broken after I got in, but too late for me to get out. I do not know whether Mr. Ferrall knew of the condition of the coupling before the injury. He was present when I went in, looking at me; told me to get a pin and make the coupling. They were flat cars. Mr. Ferrall never said anything to me about coupling cars until the day I was hurt. I was hurt because the drawhead being dropped down let it come about two inches further than it would (otherwise) have done."
Plaintiff was asked: "If you had looked at these logs as they were loaded when you first went to the car, to couple it, could not you have told that they were improperly loaded?" "I did not notice particularly." "I ask if you had looked." "If I had looked I reckon I could have seen it." "If you had looked at the logs you could have told that they were improperly loaded?" "If I had any experience. I could not have told, because I did not have any experience in coupling."
There was evidence on behalf of defendant contradicting plaintiff's statement that he was ordered by Mr. Ferrall to make the coupling. There was evidence that plaintiff made statements both corroborating and contradicting his testimony. No exceptions appear in the record in regard to the testimony respecting the extent of the injury or measure of damages. The defendant submitted a number of prayers for special instructions. The exceptions to the ruling of the Court are set out in the opinion. There was judgment for the plaintiff, (42) upon the verdict, to which defendant excepted and appealed. *Page 56 
after stating the case: While defendant noted several exceptions to ruling of his Honor upon the admission of testimony, they are not noted or urged in the brief, and, under the rule of this Court, are treated as abandoned. Rule 4, 140 N.C. 666.
The first exception insisted upon is pointed to the refusal of the Court to charge the jury that, upon all of the evidence, the plaintiff is not entitled to recover. This instruction assumes that the jury should find that the transaction occurred in the manner testified to by plaintiff. Defendant contends that the testimony construed in the light most favorable to plaintiff shows, as matter of law, contributory negligence. The defendant overlooks the decision of the Court at the last term in Hemphillv. Lumber Co., 141 N.C. 487, in which it is held that the provisions of Revisal, sec. 2646, apply to corporations operating railroads for the purpose of moving logs. The relative rights and liabilities of the parties to this action are governed by the statute, as construed by the Court, in a line of cases beginning with Greenlee v. v. R. R., 122 N.C. 977. In Elmorev. R. R., 132 N.C. 865, the question was considered and, following Masonv. R. R., 111 N.C. 482, it was said that when an employee, acting under the order of the conductor, was injured in coupling defective cars of which he had no notice until it was too late to escape, it was error to withdraw the case from jury. There was evidence on the part of plaintiff that (43) the coupling was defective, and that such defect was the proximate cause of the injury; that he was ordered by the general superintendent to make the coupling. The defendant's contention that failing to examine the coupler and ascertain its defective, condition before obeying the order was not only negligence, but, as matter of law, or legal inference, the proximate cause of the injury, cannot be sustained. If it had appeared that he knew of such defect, and that the chances of being injured in obeying the order were greater than in doing so safely, and that, with such knowledge, he took the chances, under the ruling of this Court in Elmore's case, supra, he could not recover. The use of a defective coupler was a violation of a positive duty, a constant menace to employees, and, in connection with an express order of the superintendent to make the coupling, was continuing negligence, and the causa causans of the injury. The principle upon which Greenlee's case and a number of others are based has been *Page 57 
repeatedly anounced [announced] and uniformly applied by this Court. His Honor correctly declined to give the instruction requested. In this connection he charged the jury:
"It was the duty of the plaintiff to have acted as a prudent man would have acted under similar circumstances, taking into consideration all the conditions and circumstances at the time. If, at the time the plaintiff attempted to couple the cars and was injured, great danger in doing so was manifest to him, but, notwithstanding such manifest danger, he did attempt to couple the cars and in doing so was injured, then the Court charges you he was guilty of contributory negligence, notwithstanding you may find that he was told to do so by the witness Ferrall, the defendant's agent and manager. If you find that at the time the plaintiff went in between the cars to make the coupling, or attempted to make it, he reasonably believed that there was no danger in doing so, and did only what a prudent man would have done under similar circumstances if he was coupling cars, then the Court charges that he was not guilty of contributory negligence, and (44) you should answer the second issue `No,' that is, the issue of contributory negligence — provided you find from the greater weight of the evidence that he was ordered to make the coupling by the defendant."
There was no error in this instruction of which the defendant can complain.
We adhere to the conclusion reached by us in Hemphill's case, supra, that roads operated for hauling logs come within the beneficent provisions of Revisal, 2646. The statute is remedial, being for the protection of employees on railroads from injury by reason of defective machinery, ways or appliances. We think that the evils intended to be remedied, and the protection extended, as well as the language of the statute, include all corporations owning or operating railroads. The question is so fully discussed and the authorities cited by Clark, C. J., in Hemphill's case,supra, that it is unnecessary to do more than refer to the opinion therein. For the same reason the defendant's eighth exception cannot be sustained.
The twelfth exception is directed to the following instruction given to the jury: "That if the jury shall find from the evidence that the defendant's car was equipped with a broken draw-head, so that the draw-heads of the two cars passed each other instead of meeting when they were brought together for coupling and permitted the cars to come so close together as to crush a person coupling them, that would be negligence; and if they find from the evidence that the *Page 58 
defendant so loaded its logs on said cars that the ends projected so far over the ends of the cars that when they were brought together to be coupled the ends of the logs on the two meeting cars came so close together as to crush a person coupling the cars, that would be negligence — provided these defects were known to the defendant, or could have been known by reasonable care and diligence. If you find (45) from the evidence that the plaintiff, in obedience to the order of Ferrall, the superintendent of the defendant company, undertook to couple said cars, and on account of the broken condition of the draw-head and the negligent manner in which the logs were loaded, was caught and crushed between them and injured, you will answer the first issue, `Yes.'"
Defendant says that there is no evidence that the defect in the drawhead alone would have caused the injury. Plaintiff said: "I was hurt because the draw-head, being dropped down, let it come two inches further than it would have done." The plaintiff simply meant to say, as we construe his testimony, that the extension of the logs would not have injured him if the coupler had not been broken as described by him. This is perfectly consistent with the conditions as he described them. Two negligent acts may so operate as to become jointly the proximate cause of the injury.
Defendant says that there was evidence that plaintiff was told not to couple cars; and if the jury believed this, the plaintiff, in going between the cars to make the coupling, was disobeying orders, and that in such case defendant owed him no duty, citing Stewart v. Carpet Co., 138 N.C. 60. His Honor clearly recognized this to be the law, and made the defendant's liability depend upon whether plaintiff attempted to couple the cars in obedience to the order of the superintendent.
W. T. Liles, an assistant of Ferrall, says that when he put plaintiff to work he instructed him not to couple cars. Plaintiff denies this. It therefore became a question for the jury. If Liles did, in a general instruction, tell plaintiff not to couple the cars, it would not relieve him of the duty of obeying an express order given by the general superintendent, the superior of both. In several parts of the charge, which is very full, his Honor instructed the jury that they must find that plaintiff attempted to make the coupling in obedience to (46) Ferrall's order before they could answer the first issue in the affirmative. At one time his Honor says: "Did the plaintiff go in there without being ordered by Ferrall? Did he go in there of his own volition? If he did, you will answer the first `No.'" In another portion of his charge, after presenting certain phases of the case to *Page 59 
which there is no objection, he concluded: "If plaintiff undertook to couple said cars because he was so ordered by said superintendent, and was injured as alleged, he is entitled to recover, and you will answer the first issue `Yes.'"
Defendant excepted to the words "he is entitled to recover." It is too well settled to require or justify the citation of authority that in construing an instruction given by the trial Judge, the entire charge will be examined and language excepted to read in connection with the context. If we were required to disassociate the language excepted to, we would be compelled to sustain the exception. It is elementary that such an instruction, standing alone, would be error; but it would do violence to all fair rules of construction and attribute to the jury a degree of ignorance rendering them unfit for the important duties imposed upon them by the law, to suppose that they did not understand that the Judge was referring only to the first issue, as he expressly stated. In that connection and at that time no reference whatever had been made to the question of contributory negligence. While we do not commend the use of the expression, we cannot find in it, as used by his Honor, reversible error.
After stating an hypothesis which if found to be true, his Honor told the jury they should answer the first issue in the negative, he said: "But if you find from the greater weight of the evidence that Ferrall told this man to go in and make this coupling, why then you will consider the second issue, `Was the plaintiff guilty of contributory negligence?' That means, gentlemen, was his negligence the proximate cause of his injury?"
To this language defendant excepts. The criticism is that (47) the language makes the defendant's liability depend entirely upon the question whether defendant's superintendent ordered the plaintiff to make the coupling, regardless of all other questions. Very much testimony had been introduced tending to, and if believed, clearly contradicting plaintiff in that respect. Ferrall denied that he had given such order. Several witnesses had sworn that plaintiff had made contradictory statements. Dr. Picot and others had testified to corroboratory statements. It is evident that upon the first issue this question was the principal fact in controversy. Before using the language excepted to, his Honor had fully stated the contentions of the parties and the essential elements upon the existence of which the answer to the first issue depended. His Honor again stated the basis of plaintiff's claim in language to which there was an exception which was abandoned in this Court. We can not think that the jury could have *Page 60 
misunderstood his Honor or been misled by his language. The exception does not present the question decided in Tillett v. R. R., 115 N.C. 662;Williams v. Haid, 118 N.C. 481. In those cases separate and distinct propositions of law, one of which was erroneous, were laid down by the Court.
Plaintiff introduced Dr. Picot to prove declarations made by him after the injury, in regard to the manner in which it occurred. He also introduced his father and another witness who were present and heard other declarations.
At the time all of this class of testimony was admitted his Honor stated that it was competent only for the purpose of corroboration. When he charged the jury, reciting Dr. Picot's testimony, he repeated that it was to be considered only for that purpose, but failed to do so in reciting the testimony of the other witnesses.
The exception is disposed of by Rule 27, 140 N.C. 662: "When testimony is admitted, not as substantive evidence, but in (48) corroboration or contradiction, and that fact is stated by the Court, when it is admitted, it will not be ground for exception that the Judge fails in his charge to again instruct the jury specially upon the nature of such evidence, unless his attention is called to the matter by a prayer for instructions."
Defendant suggests that after stating to the jury that Dr. Picot's evidence was to be considered only as corroborative, and failing to repeat the same in connection with the testimony of the other witnesses, was calculated to impress the jury with the belief that they could consider such testimony as substantive evidence. We can not think so. If such impression was made on the mind of counsel at the time, he should have requested the Court to say to the jury that the same rule applied to all of the testimony of that class. We do not doubt that his Honor would have promptly done so. The exception can not be sustained.
The record contains a number of exceptions to his Honor's charge, all of which, except those discussed herein, were abandoned.
We have examined the entire charge and find no error of which defendant can complain. As his Honor repeatedly told the jury, the principal controversy in respect to the facts was whether the plaintiff was ordered by the defendant's superintendent to make the coupling. That question was fairly submitted, and upon the instructions given the jury they found for the plaintiff.
No Error.
Cited: Twiddy v. Lumber Co., 154 N.C. 240; Speight v. R. R., 161 N.C. 85. *Page 61