HAIRSTON v. LEATHER COMPANY.

(Filed December 22, 1906).

*Railroads—Automatic Couplers—Negligence—Continuing Negligence—Contributory Negligence—Assumption of Risks—Fellow-servant Act—Recklessness—Scope of Employment—Disobedience of Orders—Issues.*

1. In an action for injuries received in coupling cars without automatic couplers by an employee of a large manufacturing company which in connection therewith and as part of the same owns twelve to fourteen miles of railroad track on which it operates with its own crew, engine and cars belonging to it, and the cars of other roads, the Court was correct in charging the jury that the failure of the defendant to equip its cars with automatic couplers was negligence, and that if such failure was the proximate cause of plaintiff's injuries, they would answer the issue as to negligence "Yes."

2. The jury, under the charge, having found the issue of negligence against defendant, under the principle established in the *Greenlee* and *Troxler cases,* both the defenses of assumption of risk, which ordinarily includes the negligence of a fellow-employee, and that of contributory negligence, are closed to defendant, unless, perhaps, the negligent conduct of the injured employee should amount to recklessness.

3. The Fellow-servant Act, Rev., sec. 2646, applies to the railroad of defendant company and shuts off the defense of injury by negligence of a fellow-servant and bars all defenses by reason of assumption of risk unless the "apparent danger was so great that its assumption amounted to reckless indifference to probable consequences."

4. Where the jury found that the plaintiff was injured by the negligence of the defendant in failing to have its cars equipped with automatic couplers, the only defense open to the defendant, in the absence of any evidence of recklessness, was whether plaintiff was injured in the course of his service and employment, and the Court properly submitted a separate issue as to this matter.

ACTION by Luther Hairston against the United States Leather Company, heard by *Judge O. H. Allen* and a jury, at the September Term, 1906, of the Superior Court of BUNCOMBE.

There was allegation and evidence on the part of plaintiff tending to show that defendant, a corporation engaged in the business of manufacturing leather and extracting tannic acid, in aid of and as a part of its enterprise, had constructed and was using 12 to 14 miles of railroad track, standard gauge, in and around its plant at Old Fort, N. C., and in operating, this road had its own crew, engines, cars, etc.; and also used and shifted the railroad cars of other roads on which wood required for its purposes was brought to its plant. This wood was brought from various localities in railroad cars, and these cars were placed by the railroad on its sidetrack, where the engines and crew of defendant company would move them onto the tracks of defendant, where they were unloaded and the wood stacked between these tracks of defendant company, from which point the railroad crew afterwards and as required would load the wood onto its own cars and haul same to points accessible and convenient to the chipper-house, where the machines of defendant company cut the wood up. Where the tracks permitted, by reason of being on an incline, the shifting of cars was sometimes done by hand, and especially was this true in pushing the cars from the chipper-house track into the chipper-house yard and up to the machines. That the cars of defendant were smaller than the railroad cars, being something like 18 feet in length, and not so high, and were without automatic couplers, the old style link and pin being used for the purpose. That plaintiff was an employee of defendant company, whose duties called on him to work at the chipper machines, and in the course and scope of his duties he was called on frequently to move these cars and stop them and couple and uncouple same; and on the occasion referred to, to-wit, 2 May, 1904, in the course of his duty he was on a car which he had started and was letting it roll down towards another car to which it was to be coupled. While plaintiff was so engaged, and as he was about to couple

143—33

the car he was on to another, the pin which had been pre-pared failed to drop properly so as to effect the coupling, but fell to the ground between the cars. That plaintiff, remain-ing on the car, got down on his all-fours and was reaching down to pick up the pin, when a co-employee on the third car allowed same to roll down against the car he was on, jolting plaintiff's hand between the draw-heads, where it was mashed and severely injured. That this employee, one Will Caldwell, could have seen how plaintiff was engaged at the time, there being no obstruction, and plaintiff being in full view.

Plaintiff claimed that on these facts, if established, defend-ant was guilty of actionable negligence: (1) In not provid-ing the cars with coupling devices, as required by law. (2) In negligently causing the violent collision between the cars as above set forth, while plaintiff was in plain view of those in control of the car which ran into the one plaintiff was on.

Admitting that the cars were without automatic couplers, defendant denied that there was any negligence on its own part, and claimed that it was no part of plaintiff's duties either to couple or uncouple cars, but that his duty was to work at the chipper machines, and alleged contributory negli-gence on part of plaintiff. Further, that plaintiff had as-sumed the risk of the injury which occurred to him, and that he was injured by the negligence of a fellow-servant in charge of the rear car, etc.

Defendant offered testimony to sustain his positions, and tendered issues as follows:

1. Was the plaintiff injured by the negligence of the de-fendant, as alleged in the complaint?

2. Was the plaintiff, at the time he received the alleged injuries, acting in disobedience of the orders of the defend-ant given to him by his foreman, J. Y. Allison?

3. Did the plaintiff contribute to his injury by his own negligence?

4. Was the plaintiff injured by the negligence of a fellow-servant?

5. Did the plaintiff assume the risk of an injury when he undertook to couple the cars outside of his regular duty?

6. Is the plaintiff entitled to recover damages; and if so, what sum?

The Court submitted the following issues, which were responded to by the jury as follows:

1. Was the plaintiff injured by the negligence of the defendant, as alleged in the complaint? Answer: Yes.

2. Was the plaintiff, at the time he received the alleged injuries, acting in disobedience of the orders of the defendant given to him by his foreman, J. Y. Allison? Answer: No.

3. Is the plaintiff entitled to recover damages; and if so, what sum? Answer: $1,000.

There was judgment on the verdict for plaintiff, and defendant excepted and appealed.

*Locke Craig* for the plaintiff.

*Merrimon & Merrimon* for the defendant.

HOKE, J., after stating the case: In the cases of *Greenlee* and *Troxler,* both being actions to recover for injuries inflicted on employees by the negligent failure of railroad companies to furnish their cars with automatic couplers, the principle was announced that such a failure would amount to continuing negligence on the part of the companies which would shut off the defense of contributory negligence and assumption of risk.

In *Greenlee's case,* reported in 122 N. C., 977, it was held:

(*a*) "The failure of a railroad company to equip its freight cars with modern self-coupling devices is negligence

*per se,* continuing up to the time of an injury received by an employee in coupling the cars by hand, for which the company is liable whether such employee contributed to such injury by his own negligence or not.

(*b*) "The former decisions of this Court touching upon the duties of railroads to provide modern appliances by coupling cars otherwise than by hand and foreshadowing the early holding that the failure to do so would be negligence *per se,* and the act of Congress (27 U. S. Statutes at Large, p. 531) requiring self-couplers to be placed on all cars by 1 January, 1898, and the general adoption by railroads of such self-couplers, made it the duty of defendant to adopt such devices, and its failure to do so, whereby an employee was injured, was negligence *per se.*

(*c*) "The fact that an employee remains in the service of a railroad company, knowing that its freight cars are not equipped with self-couplers, does not excuse the railroad from liability to such employee if injured while coupling its cars by hand, the doctrine of 'assumption of risk' having no application where the law requires the use of new appliances to secure the safety of employees and the employee, being either ignorant of the law's requirement or expecting daily compliance with it, continues in the service with the old appliances."

In *Troxler's case,* reported in 124 N. C., 189, it was held:

(1) "Reason, justice and humanity, principles of the common law, irrespective of Congressional enactment and Interstate Commerce Commission regulation, require the employer to furnish to the employee safe modern appliances with which to work, in place of antiquated, dangerous implements, hazardous to life and limb; and the failure to do so, upon injury ensuing to the employee, is culpable, continuing negligence on the part of the employer, which cuts off the defense of contributory negligence and negligence of a fellow-servant, such failure being the *causa causans.*

(2) "It is negligence *per se* in any railroad company to cause one of its employees to risk his life and limb in making couplings which can be made automatically without risk."

In *Hicks v. Manufacturing Co.,* 138 N. C., 331, it was said that both of these cases were approved; and further, that the principle therein announced would be further applied in cases of like peril and circumstance; and we think it should be applied here.

The defendant company, being a large industrial plant, in connection therewith, and as part of same, has constructed and owns, in and around its plant at Old Fort, N. C., 12 to 14 miles of railroad track, standard gauge, on which it operates with its own crew, engines and cars, and also the railroad cars of other companies carrying to that point the material required for its purpose. It is an enterprise of unusual extent and proportions, no doubt doing more hauling than many of the logging roads, which have been held as railroads under our decisions, and more shifting and coupling and uncoupling of cars than would be done on the same or much greater quantity of mileage in the operation of a regular railroad.

The track being situated on a level bottom in and around its plant, there would seem to be no difficulty in the procurement and use of these coupling devices, and at comparatively small cost, by means of which these cars could be coupled automatically and without risk; and the Judge below was correct in charging the jury that the failure on the part of the company to equip its cars with automatic couplers was negligence, and that if such failure was the proximate cause of plaintiff's injury they would answer the first issue "Yes."

The jury, under the charge, having found this issue against the defendant under the principles established in the *Greenlee* and *Troxler* cases, both the defenses of assumption of risk, which ordinarily includes the negligence of a fellow-em-

ployee, and that of contributory negligence, are closed to defendant, and any issues addressed to these questions become immaterial and irrelevant unless, perhaps, the negligent conduct of the injured employee should amount to recklessness.

Again, we have held at the present term, in *Bird v. Leather Co.,* that the act known as the Fellow-servant Act, being Revisal, sec. 2646, applies to the railroad of defendant company, citing *Hemphill v. Lumber Co.,* 141 N. C., 487.

This statute, among other things, enacts that any employee of a railroad who is injured in the course of his service or employment by the negligence of a fellow-servant or by reason of any defect in the machinery, ways or appliance of the company, shall be entitled to maintain an action, and that any contract of an employer, express or implied, to waive the benefit of this section shall be void.

This statute, in express terms, shuts off the defense of injury by negligence of a fellow-servant, which was formerly open to defendant. And in *Coley's case,* 129 N. C., 407, it was held that in cases where same applied, it barred all defenses by reason of assumption of risk unless the "apparent danger was so great that its assumption amounted to reckless indifference to probable consequences." There was no recklessness here, nor was there any evidence tending to establish it. On the contrary, the plaintiff appears to have been doing as well as could be done with the appliance given him; and he testified that if he had gotten down on the ground and under the car to pick up the pin, his injury, in all probability, would have been much more serious.

These two defenses, then, being withdrawn from defendant, both under the decisions in *Greenlee* and *Troxler* and by the construction put upon the statute in *Coley's case, supra,* the numerous exceptions addressed to these questions become immaterial, and the only defense open to defendant on the

facts presented was whether plaintiff was injured in the course of his service and employment.

The principles held to be controlling in this case, both in the decisions and by the statute, apply only for the protection of employees`who are wrongfully injured in the course of their employment.

If this plaintiff went out of the line of his service and employment, and, in disobedience to the orders of his superior, officiously undertook to couple and uncouple cars, when it was no part of his duty to do so: in that event, both of these defenses would be open to defendant, and a different rule of responsibility would attach.

The evidence was conflicting on this question: that of the plaintiff tending to show that plaintiff, at the time of the injury, was acting in the course of his employment; on the part of defendant, that plaintiff was acting out of the line of his duty, in disobedience to the express orders of his foreman.

The Court very properly submitted a separate issue as to this matter, and under a charge as favorable as defendant could expect, or had any right to ask, the jury have decided the question in favor of plaintiff; and this being true, under the principles discussed, and on the testimony, the plaintiff has a clear right of action.

.There is nothing here said which conflicts in any way with the case of *Elmore v. Railway,* 132 N. C., 865. In that case, the Court, in sustaining a recovery had by plaintiff in the Court below, where a defendant had negligently failed to keep its cars supplied with automatic couplers which would work, held that the charge of the trial Judge was sufficiently favorable to defendant, the same being as follows:

"If plaintiff knew that the coupler was out of order, and that it was too dangerous to go between the cars to couple, and that plaintiff used his foot to make the coupling, and that by

reason of his position he acted foolishly and without prudence with reference to the character of the work, and that this act was carelessness, the chances of safety being less in favor of him than against him, he would be guilty of contributory negligence, even if defendant knew of the defective condition of the coupler."

As said by the Court, this is sufficiently favorable to the defendant, for it is the rule which applies in ordinary cases of contributory negligence and assumption of risk. *Hinshaw v. Railroad,* 118 N. C., 1047. But in cases like the present, involving the principles established by the cases of *Greenlee* and *Troxler* and *Coley's case,* where same applies, the correct rule is held to be as indicated in this opinion.

There is no error, and the judgment below is affirmed.

No Error.