PARRIS *et al. v.* TENNESSEE POWER Co. *et al.*

(*Knoxville.* September Term, 1916.)

**1. RAILROADS. Construction. Liens. "Railroad company."**

A corporation, by its carrier authorized to develop water power and to purchase and acquire rights of way and appliances for such purposes, which builds a line of railway to convey materials for its construction work and incidentally conveys passengers, though without charge, is a "railroad company," within Acts 1891, chapter 98, section 1, entitling subcontractors, laborers, materialmen, and others who perform work in construction of a railroad to a lien therefor. (*Post, pp.* 202-209.)

Acts cited and construed: Acts 1891, ch. 98, sec. 1.

Cases cited and approved: Ellington v. Beaver Dam Lumber Co., 93 Ga., 53; Cunningham v. Neal, 101 Tex., 338; Bird v. U. S. Leather Co., 143 N. C., 283; Hairston v. U. S. Leather Co., 143 N. C., 512; Coughlan v. Cambridge, 166 Mass., 268; McKnight v. Iowa & M. R. Const. Co., 43 Iowa, 406; Mace v. H. A. Boedker & Co., 127 Iowa, 721; Penney v. St. Joe Stockyards Co., 212 Mo. 309; Winters v. Duluth, 82 Minn., 127; Liles v. Forburg Lumber Co., 142 N. C., 39; Wright v. Caney River R. Co., 151 N. C., 529; Bissell v. Greenleaf-Johnson Lumber Co., 152 N. C., 123; Twiddy v. Dare Lumber Co., 154 N. C., 237; Roberson v. Greenleaf-Johnson Lumber Co., 154 N. C., 328; Jackson v. Ayden Lumber Co., 158 N. C., 317; Blackburn v. Cherokee Lumber Co., 152 N. C., 361; Carter v. Coharie Lumber Co., 160 N. C., 8; Hampton v. Woolsey, 139 S. W,. 888; Lodwick Lumber Co. v. Taylor, 39 Tex. Civ. App., 302; San Jacinto & S. R. Co. v. McLin, 26 Tex. Civ. App. 423; Hawey v. Deep River Logging Co., 49 Or., 583.

Case cited and distinguished: Schus v. Powers-Simpson Co. 85 Minn., 447.

Parris v. Tennessee Power Co.

**2. RAILROADS.  Construction.  Liens.  Railroad company.**

To bring a railroad company within the terms of such statute, it need not even be incorporated, and may be composed of private owners. (*Post*, pp. 209, 210.)

FROM POLK.

Appeal from the Chancery Court of Polk County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court. —Foss H. MERCER, Chancellor.

MEACHAM & McGAUGHY, for plaintiffs.

ALLISON, LYNCH & PHILLIPS, for defendant.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The bill in this case was filed by Parris and numerous other persons to have declared their lien upon a line of railway belonging to the defendant for the amounts due them for labor done for George Richmond, a subcontractor under the Converse Bridge Company, in constructing bridge work on the line. The lien is claimed under section 1 of chapter 98, of the Acts of 1891. So much of the section as need be copied reads:

"Hereafter every subcontractor, laborer, materialman or other person who performs any part of the work in grading any railroad company's roadway,

or who constructs or aids in the construction or repairs of its culverts and bridges, or furnishes crossties or masonry or bridge timbers for the same, which is used in the building and construction of such railroad, its bridges and culverts, or who lays or aids in the laying of its track, building of its bridges, the erection of its depots, platforms, wood or water stations, section houses, machine shops or other buildings, or for the delivery of material for any of these purposes, or for any engineering or superintendence, or who performs any valuable service, manual or professional, by which any such railroad company receives a benefit, all and every such person or persons shall have a lien on such railroad, its franchises and property, for the value of such work and labor done, or material furnished, or services rendered as hereinbefore set out and specified, in as full and ample a manner as is now provided by law for persons contracting directly with such railroad company for any such work and labor done, or for materials furnished: Provided, that within ninety days after such work and labor is done or completed, or such materials are furnished, or such services are rendered, such subcontractor, laborer, materialman or other person or persons rendering the hereinbefore mentioned service, shall notify in writing any such railroad company, or the owners of such railroad, should it or they reside in the state, or its or their agents or attorneys, should it or they be beyond the limits of the state, that said lien is claimed, spe-

cifying in the face of said notice the character of the work and labor done, or services rendered, or materials furnished, and the value thereof; and said lien shall continue for the space of one year from the service of said notice, and continue until the termination of any suit commenced for the enforcement of said liens, brought within said one year; and said liens shall have priority over all other liens on such railroad, its property and franchises."

The chancellor denied the lien claimed, and his decree was affirmed by the court of civil appeals. The case was then brought to this court by the writ of *certiorari*. We think both courts were in error.

The company was incorporated for the following purposes, as set out in the charter:

"(1) To improve and develop the water power of rivers and streams which are in fact navigable or unnavigable for generating, distributing, and selling electricity and electrical and mechanical power for manufacturing light, heat, or any other purposes to which electricity or electrical or mechanical power is now, or may hereafter be applied in any manner or form whatsoever. (2) To establish and construct or acquire by lease, purchase, or otherwise, waterworks for the purpose of supplying cities, towns and villages with water for domestic, sanitary, manufacturing or other purposes. For these purposes said company is hereby authorized and empowered to and invested with the privilege of constructing or acquiring from others, by purchase, lease or otherwise,

lands, rights of way, reservoirs, dams, canals, flumes, pipe lines and such other works, plants, equipments and appliances and appurtenances as may be necessary, useful, or appropriate for collecting, conveying or utilizing the water for power, manufacturing, domestic, sanitary and other uses.''

As incidental to the effectuation of the purposes just mentioned it constructed, first, about twelve miles of railway. Subsequently continuing the line, defendant built another section of it, running from the upper end of a lake belonging to it, to the extremity of its works, the two sections of the road being connected by boat service over the lake. The railway at one end connected with the Louisville & Nashville Railway Company's line at Ocooe. The railroad is constructed as any other, and is used principally for the carrying of materials backwards and forwards for the construction and repair of its main works, and also for inspection of its line of work devoted directly to the business for which it was chartered. This railroad likewise carries freight and passengers from one extremity to the other—that is, from its connection with the Louisville & Nashville Railroad, at Ocooe, to the other end, twenty miles of rail in all; but it makes no charge for such service.

It is insisted in behalf of the defendant that it is not a railroad company. We think this is too narrow a construction. A railroad company ordinarily means a commercial line, but not necessarily so. The work of a laborer on such a line as we have before us

Parris v. Tennessee Power Co.

falls clearly within the equity of the statute. No reason is perceived why work on such a line of railway should be entitled to less consideration than similar work on a line directly devoted to commercial purposes. As said in Cyc.:

"Certain statutes applicable in terms to railroad companies, or railroad corporations, have been held to apply to a receiver operating a railroad, or a mortgagee or a trustee under a mortgage in possession, or to a trust company operating a road for the benefit of bondholders. A company authorized to construct and operate a railroad for the transportation of persons and property is none the less a railroad company because also authorized to conduct some other business, as that of a coal, mining, or manufacturing company; and, although incorporated primarily for some other purpose, if it is also authorized to and does construct and operate a railroad, not only for the transportation of its own product, but as a public railway for the conveyance of freight and passengers, it is a railroad company." 33 Cyc. 37.

There is some authority to the contrary, as shown on the same page by the citation of *Ellington* v. *Beaver Dam Lumber Co.*, 93 Ga., 53, 19 S. E., 21, and other cases not there cited. But the weight of authority, and of reasoning, as we think, is in favor of the text which we have quoted. *Schus* v. *Powers-Simpson Co.*, 85 Minn., 447, 89 N. W., 68, 69 L. R. A., 887; *Cunningham* v. *Neal*, 101 Tex., 338, 107 S. W.,

539, 15 L. R. A., (N. S.) 479; *Bird* v. *United States Leather Co.*, 143 N. C., 283, 55 S. E., 727; *Hairston* v. *United States Leather Co.*, 143 N. C., 512, 55 S. E., 847, 10 Ann. Cas., 698; *Coughlan* v. *Cambridge*, 166 Mass., 268, 44 N. E., 218; *McKnight* v. *Iowa & M. R. Construction Co.*, 43 Iowa, 406; *Mace* v. *H. A. Boedker & Co.*, 127 Iowa, 721, 104 N. W., 475; *Penney* v. *St. Joseph Stockyards Co.*, 212 Mo., 309, 111 S. W., 79, and other cases cited, *infra*.

In the case of *Schus* v. *Powers-Simpson Co.*, it appeared that the defendant was a corporation organized for the purpose of manufacturing and dealing in lumber, buying, improving, selling, and dealing in real and personal property connected with its lumbering business, and in addition thereto and in connection therewith it owned and operated what was called a logging railroad, which was equipped with four locomotives, and a number of box cars were used in carrying logs from the pineries to the sawmill owned and operated by it. It did not follow the business of a common carrier of passengers and freight, the operation of the railroad being limited exclusively to its own private business; but its servants and employees engaged in the operation of its trains were exposed to the same dangers and risks as employees and servants of railroad corporations engaged as common carriers. It was held that Gen. St. 1894, section 2701, known as the "fellow servant act," applied to the defendant, and it was liable to all employees engaged in the operation of such railroads

for injuries caused by the negligence of a coemploye or fellow servant.   In the body of the opinion it is said:

"The test in interpreting and construing this statute is not whether the corporation engaged in operating the railroad was organized as a railroad corporation, but whether the road being operated is a railroad, within the ordinary meaning of the term, in and about the operation of which employees are exposed to those dangers and risks against the consequences of which the legislature intended to provide.   In Sutherland, Stat. Constr. 218, it is said to be indispensable to a correct understanding of a statute to inquire what is the subject of it—what object is intended to be accomplished by it.   When the subject-matter is once clearly ascertained, and its general intent, a key is found to all its intricacies. General words may be restrained to it, and those of narrower import may be expanded to embrace it, to effectuate that intent.   When the intention can be collected from the statute, words may be modified, altered, or supplied, so as to obviate any repugnancy or inconsistency with such intention.   The subject-matter of the statute under consideration, and its intent and purpose, were to protect employees engaged in a dangerous and hazardous employment; and, within the decisions cited, the character of the employer is not of controlling importance.   The statute is to be given, if not a liberal, at least a reasonable, interpretation, and one that will carry into effect the

intent of the legislature. If the character of the employer, within the meaning of the statute, is not important, and the nature of the employment is the test to be applied in construing the statute, the expression 'any railroad corporation engaged in the operation of a railroad' should, within the rule laid down by Sutherland, be enlarged and expanded so as to include any person, company, or corporation engaged in operating a railroad, incident to which operation are the dangers and hazards from which the legislature intended to protect the employees. *Winters* v. *Duluth,* 82 Minn., 127, 84 N. W., 788. Defendant was not organized as a railroad corporation, it is true; but it is conceded that it is operating a line of railroad equipped with engines and cars, the operation of which, so far as concerns the running of its trains, is identical with ordinary railroads, except that it is in the interests of its own private affairs. . . . The mere fact that it is called a 'logging railroad,' and came into existence since the passage of that act, is by no means decisive of the question. It is a general rule of statutory construction that legislative enactments in general and comprehensive terms, prospective in operation, apply alike to all persons, subjects, and business within their general purview and scope coming into existence subsequent to their passage.''

In *Cunningham* v. *Neal,* supra, it was held that a private railroad operated by a company not incorporated for railroad purposes was within the mean-

ing of a fellow servant act relating to railroads. In the North Carolina cases cited it was held that a statute abolishing the fellow servant doctrine as to the employees of "any railroad company operating in this State" applied to a corporation chiefly engaged in the manufacture of leather, and the production of tannic acid, which, in connection with and in aid of its primary purpose, owned in and around its premises twelve or fourteen miles of standard gauged track, upon which it operated its own engines and cars with its own crew. In *Coughlan v. Cambridge,* supra, it was held that a short and temporary track upon which a municipal corporation, by means of a locomotive and train, transported gravel from one portion to another of premises owned by it, for the purpose of grading around its waterworks, was a railroad within the meaning of the statute of that state (Laws 1887, chapter 270), which made an employer liable for injuries to an employee resulting from the negligence of a fellow servant in charge of a "locomotive, engine, or train upon a railroad." In the Iowa cases it was held that a construction company running a gravel train doing the business of constructing a roadbed for the use of another corporation was operating a railroad within the meaning of the Iowa statute abolishing the fellow servant rule as to the employees of "every corporation operating a railway." In the Missouri case cited a statute providing that "every railroad corporation owning or operating a railroad shall be liable," etc., was held

to apply to a stockyards company authorized to "operate terminal lines of railway" in connection with its stockyards.

The North Carolina statute, providing that "any servant or employee of any railroad company operating within the state shall be entitled," etc., has been held to apply to logging and lumber roads. *Liles* v. *Fosburg Lumber Co.*, 142 N. C., 39, 54 S. E. 795; *Wright* v. *Caney River R. Co.*, 151 N. C. 529, 66 S. E., 588, 19 Ann. Cas., 384; *Bissell* v. *Greenleaf-Johnson Lumber Co.*, 152 N. C., 123, 125, 67 S. E., 259; *Twiddy* v. *Dare Lumber Co.*, 154 N. C., 237, 70 S. E., 282, 47 L. R. A. (N. S.), 135; *Roberson* v. *Greenleaf-Johnson Lumber Co.*, 154 N. C., 328, 70 S. E., 630; *Jackson* v. *Ayden Lumber Co.*, 158 N. C., 317, 74 S. E., 350. So private railroads have been held to be within the North Carolina safety appliance act. *Blackburn* v. *Cherokee Lumber Co.*, 152 N. C., 361, 67 S. E., 915; *Hairston* v. *United States Leather Co.*, 143 N. C., 512, 55 S. E., 847, 10 Anno. Cas., 698. It has also been held in that State that a logging railroad, which is standard-gauged, steel-railed, connected by a switch with another railroad operated by steam engines, and standard-gauged cars, and has branches extending at convenient intervals into the woods over which the same engine and cars are used, which branches are sometimes taken up and relaid elsewhere, is a railroad within Revisal 1905, section 2018, relative to the liability of railroad companies for labor performed in constructing a railroad for

Parris v. Tennessee Power Co.

a contractor, although, in 1872, when that section was first enacted, there were no logging railroads in existence, since legislative enactments in general and exclusive terms apply alike to all persons, subjects, and business within their general scope coming into existence subsequent to their passage. *Carter* v. *Coharie Lumber Co.,* 160 N. C., 8, 75 S. E., 1074. A contractor engaged in supplying logs to a sawmill by means of a spur to a railroad over which he operated a flat car or log skidder, solely for the purpose of transporting logs, was held to be operating a railroad. *Hampton* v. *Woolsey* (Tex. Civ. App.), 139 S. W., 888.

It is true that none of the cases cited are directly on the point as to the existence of a lien, but the fundamental question is the same, in respect of whether a private railroad should be treated as a railroad under a general act, as to the liabilities of railroads. These cases also throw light upon the question as to what is a railroad company under such statute. And see *Lodwick Lumber Co.* v. *Taylor,* 39 Tex. Civ. App., 302, 87 S. W., 358; *San Jacinto & S. R. Co.* v. *McLin,* 26 Tex. Civ. App., 423, 64 S. W. 314; *Harvey* v. *Deep River Logging Co.,* 49 Or., 583, 90 Pac., 501, 12 L. R. A., (N. S.) 131.

As to our particular statute, we think the term "railroad company" employed therein would cover the case of any one operating a railway train with engine and cars, even though only as incidental to its main business. We are of the opinion, also, that it

is not required that the owner of the railroad should be a corporation even.   There is some language in the section indicating that it would apply even to individuals.   Note the following:

"Provided that within ninety days after such work and labor is done or completed, or such materials are furnished, or such services rendered, such subcontractor, laborer, materialman, or other person or persons rendering the hereinbefore mentioned services shall notify in writing any such railroad company, or the owners of such railroad, should it or they reside in the state," etc.

As we have already said, such persons are within the reason of the statute, and likewise persons doing work on such lines of railway are likewise within its reason, and therefore under its protection.

On the ground stated we are of the opinion that the judgment of the court of civil appeals should be reversed, and a decree should be entered here for the amount due the respective complainants declaring a lien upon the line of railway.