CORNELIA WRIGHT, Administratrix of Turner Wright, v. CANEY
RIVER RAILWAY COMPANY, C. J. MORROW, Trustee
for Creditors of Wood-Galloway Company et al.

(Filed 23 December, 1909.)

1. Tramways — Regulations and Liabilities — Railroads — Fellow-
Servant Act.

A corporation organized under a charter conferring the power
of eminent domain, and the privilege of constructing tramways,
railways, etc., for the transportation of passengers and freight,
including logs, lumber, timber, etc., is considered and held as a
railroad, and subject to the regulations and liabilities affecting
such companies, including the statute known as the Fellow-Ser-
vant Act, though its chief purpose was to exploit certain timber
lands and market the timber growing thereon.

2. Trusts and Trustees—Active Trusts—Negligence—Liability.

. A trustee acting in the cutting of timber and the operation of
a railroad for marketing it, under the power conferred in a deed
of trust, with the sanction and for the benefit of the *cestui que*
*trust*, and to a large extent under their control, renders the trust
estate liable for his negligent acts committed within the scope of
his powers and in the furtherance of their interests.

3. Same—Railroads—Personal Injury.

When, under an instrument of agreement made and executed
between an insolvent corporation and its creditors, a trustee is
appointed to cut and sell a large tract of timber at a price to be
submitted to and approved by the creditors, and acting largely
under their control, and for the purpose of hauling or marketing
the timber has sublet a railroad from one of the largest creditors,
he is liable as such trustee, certainly to the extent of the trust
estate conveyed, for the negligent killing of plaintiff's intestate
while employed in the operation of the railroad.

4. Appeal and Error—Amendments—Domicile—Evidence.

Exceptions to allowing amendments in this case and declara-
tions on the question of a change of domicile are without merit.

APPEAL from *J. S. Adams, J.,* June Term, 1909, of YANCEY.
Civil action, to recover damages for the wrongful killing of
Turner Wright, deceased.

The action was instituted by Cornelia Wright, as administra-
trix of Turner Wright, deceased, on 1 August, 1907, against the
Caney River Railway Company, C. J. Morrow, trustee for credi-
tors of the Wood-Galloway Company, operating the road at the
time, under a sub-lease, and William Whitmer & Sons, Incorpo-
rated, original lessee of defendant road and one of the principal
creditors of the Wood-Galloway Company; and there was evi-
dence to show that on 13 July, 1907, Turner Wright, intestate
of plaintiff, an engineer, while operating an engine in one of
defendant's trains, was killed by the giving away of a defective

151—34

trestle of defendant company's road, and under circumstances indicating negligence on the part of defendants.

Defendants answered, denying that plaintiff was the duly qualified administratrix of deceased; denied that the trestle was negligently constructed, claiming that same was caused to give way by the wrongful conduct of two boys in turning a stream of water on the foundation of the trestle, and thus constituting this intervening negligence of responsible and independent agents as the proximate cause of the injury, and offered evidence in support of these allegations. Defendants contended, further, that in any event the defendant C. J. Morrow, trustee, was not responsible for the wrong in his official capacity as trustee, nor could the trust funds held by him be subjected to the claim of plaintiff.

It further appeared that, by virtue of an attachment issued, there were funds of the company in control and custody of the court available for satisfaction of the claim, if it should be declared a valid charge against the trust estate.

Issues were submitted, and responded to by the jury, as follows:

1. "Was the plaintiff's intestate domiciled in Yancey County at the time of his death?" Answer: "Yes."

2. "Was the plaintiff's intestate, Turner Wright, killed by the wrongful act and negligence of the Caney River Railway Company, as alleged in the complaint?" Answer: "Yes."

3. "Was the plaintiff's intestate, Turner Wright, killed by the wrongful act or negligence of the defendant C. J. Morrow, trustee, as alleged in the complaint?" Answer: "Yes."

4. "Did the plaintiff's intestate, Turner Wright, by his own negligence, contribute to his death, as alleged in the answer?" Answer: "No."

5. "What damage, if any, is the plaintiff entitled to recover?" Answer: "Six thousand dollars."

Judgment on the verdict for plaintiff, and defendants excepted and appealed.

*Hudgins, Watson & Johnston* for plaintiff.
*S. J. Ervin* for defendant.

HOKE, J., after stating the case: The defendant company was organized under a charter conferring the power of eminent domain and the privilege of constructing tramways, railways, etc., for the transportation of passengers and freight, including logs, lumber, timber, etc.; and while its chief purpose was, no doubt, to exploit certain timber lands and market the timber growing

thereon, for all purposes relevant to the present inquiry it is considered and held as a railroad and subject to the regulations and liabilities affecting such companies, including the statute known as the Fellow-servant Act (*Hemphill v. Lumber Co.,* 141 N. C., 487); and from this it follows that the defendant railway and the trustee in charge and control at the time are responsible for actionable negligence done in the operation of the road under the lease and in the exercise of the franchise. *Mabry v. Railway,* 139 N. C., 388, citing *Harden v. Railroad,* 129 N. C., 354; *Logan v. Railroad,* 116 N. C., 940; *Aycock v. Railroad,* 89 N. C., 321.

It is chiefly urged for error that the defendant C. J. Morrow, trustee, has been held liable in his official capacity and the trust fund subjected to the payment of this claim; but we are of opinion that, on the facts presented here, the objection cannot be sustained. It is true, as a general rule, that a trust fund cannot be subjected to legal liability by reason of the torts of the trustee or his agents and employees, but this doctrine ordinarily exists in the case of passive trusts, or, when active, in those instances where the power and duties of the trustee are so defined and restricted by the law, or the provisions of the instrument under which he acts, that the principle of imputed responsibility similar to that which obtains in the case of principal and agent does not and cannot prevail.

Thus, in *McLean v. McLean,* 88 N. C., 394, and several cases of like import cited and relied upon by defendants, it was held that a liability arising out of a transaction with an executor or administrator is personal in its nature, and will not, as a rule, be considered as an obligation of the estate. This is on the ground that these officers act under power conferred by the law for the purpose of settlement and distribution according to facts and conditions existent at the time of the death of the deceased; and the power to charge the estate or create liabilities against it is not recognized unless contained in the will. Though, even here, if it is shown that an obligation has been assumed by an executor for the protection of the estate, and has inured to its benefit, its payment will usually be allowed him in an account with the distributees. But no such limitation can be allowed on the facts presented here. It appears that the Wood-Galloway Company, a corporation, owners of large timber interests in the counties of Mitchell and Yancey, and elsewhere, and also of large amounts of lumber placed in various yards in said counties, estimated at several millions of feet, having become embarrassed, on 7 June, 1907, conveyed the same to C. J. Morrow, trustee, with power to haul out and market said lumber and dispose of the timber lands

and other property conveyed, and distribute the proceeds among
the creditors mentioned and described in the deed; that on
5 June, 1907, two days before the date of the said deed, William
Whitmer & Sons, Incorporated, one of the principal creditors of
the Wood-Galloway Company and *cestuis que trust* in the said
deed, sublet to the trustee in same the railroad company for
carrying out the purposes of the trust, and the trustee took
charge of the road and was using and operating the same in
hauling out the lumber and otherwise carrying out the purposes
of the trust when the intestate was killed. Among others, the
instrument contains the following provisions:

"For the purpose of carrying this trust into effect, it shall be
the duty of C. J. Morrow, trustee, aforesaid, after giving a bond
in the sum of $15,000, with good and sufficient security, to be
approved by the Unaka National Bank and City National Bank,
of Johnson City, Tennessee, to at once take charge of all said
property for the benefit of said creditors, to take an invoice of
the whole of said property as early as practicable and as con-
venient, and to furnish a copy of said invoice to each of the
creditors above named; to immediately deliver said lumber, on
sticks, in piles or other conditions, on board the cars at Huntdale,
North Carolina, from there to be shipped, under the direction of
William Whitmer & Sons, Incorporated, or other persons whom
the majority of the creditors in money may select, for which said
William Whitmer & Sons, Incorporated, are to receive five per
cent. commission on entire sale of lumber and trade discount
two per cent. thirty days for shipment; the said trustee making
copies, one of which shall be preserved by said trustee, one to
be forwarded to the said Whitmer & Sons, Incorporated, and
the third to be deposited in the Unaka National Bank, of John-
son City, Tennessee, for the use and benefit of the said creditors
herein above named, and further copies with each of the other
creditors above named. It shall be the duty of the trustee, afore-
said, to make an estimate of the quantity and value of all the
standing timber or timber remaining uncut, of every character
and description, and to furnish a copy of said estimate to Wil-
liam Whitmer & Sons, Incorporated, and deposit one copy with
the Unaka National Bank, of Johnson City, Tennessee, and each
of the above creditors above named, for the use and benefit of the
creditors hereinbefore named, and retain a copy of same in his
own offices, which shall be subject to the inspection and examina-
tion by said creditors at any and all times, to be done at as early
a date as practicable and convenient; to sell all the said standing
timber remaining uncut for cash, to the best advantage to all the

parties therein concerned; and, to make sale and disposition of the aforesaid timber, it shall be the duty of the trustee, aforesaid, before any offer for said timber shall be accepted, to submit the price, in writing, to the creditors hereinbefore named; that the said trustee shall make monthly statement of the amount realized from the sale of said lumber and timber, on or before the first day of each month, and he shall at no time retain in his possession or control a sum greater than $5,000 of the proceeds of said sale, but he shall at all times deposit and keep on deposit at the Unaka National Bank, of Johnson City, Tennessee, proceeds of said sale of the said timber and lumber, and shall distribute and prorate the money arising from said sale among the creditors herein named, less the expense of handling the same and the operating expenses of the Caney River Railway Company, which he may deduct from any moneys in his hands, furnishing an itemized statement, on or before the first of each month, of all expenses in conducting the said operation; and whenever he shall have on hand a sum equal to $5,000, the same shall be distributed among the creditors herein named, by prorating the amount according to the respective amounts due and owing each of the creditors above named.

"The said trustee shall receive as a salary the sum of $125 per month and his expenses from the time he enters upon his duty and until he discharges his trust, the same to be deducted and retained monthly in his monthly statement of expenses.

"It is further understood and agreed between the Wood-Galloway Company and the bank creditors, above named, that the said creditors shall have the right, and it shall be their duty, to furnish a competent inspector to inspect said lumber, whose duty it shall be to inspect and grade all such lumber, observing the rules prescribed by the National Hardwood Lumber Association; and the books and records of said trustee and inspector, aforesaid, shall at all times be open to the inspection of any or all of said parties concerned, their agents or representatives, to this transaction."

It will thus be seen that, under a lease to him, in his capacity as trustee, and under the powers contained in this deed, *inter partes,* the defendant C. J. Morrow, in the use and operation of the railroad, was acting throughout with the sanction and for the benefit of the creditors, the *cestuis que trust,* and to a large extent under their supervision and control, and should be held responsible, certainly to the extent of the property conveyed and in evidence, for both the contracts and torts of their trustee, made and committed within the scope of his powers and in fur-

therance of their interests. *Sawyer v. Railroad,* 142 N. C., 1; *Jackson v. Tel. Co.,* 139 N. C., 347.

Not only is this true under the general principles of imputed responsibility indicated in these cases, but on authority more directly apposite, the defendant Morrow should be held liable in his official capacity. Thus, in *Mersey Docks Board v. Gibbs, Lord Westbury* lays down the position that trustees may render the property of their beneficiaries liable to third persons for an act done by them in the exercise of their trust. And in *Bennett v. Wyndham, De Gex Fisher & Jones,* Vol. IV, p. 259, it was held that trustees should be indemnified out of the trust estate, by reason of a recovery had against them for negligence of employees in carrying out an order given in the management of the estate.

Applying the same principle in the case of *Miller v. Smythe,* 92 Ga., 154, the Court held: "1. Where a trustee legally and rightfully assumes in his representative capacity the relation of landlord, he is liable, in that capacity, to answer to the tenant for the violation of any duty which the general law attaches as an incident to that relation. Accordingly, where a trustee, duly authorized, rented a store belonging to the trust estate, and in the contract of rental agreed to keep the shelving in the store in thorough order and repair, the trust estate is liable for damages occasioned by his failure so to do."

And a ruling substantially similar has been made by our own Court in *Cheatham v. Rowland,* 92 N. C., 340. In that case it was held that the trust fund could be subjected to a liability created by the trustees in the performance of their duty concerning the trust property, and that the trustees only were required to be made parties in order to afford appropriate relief. The cases cited and relied upon by counsel for defendant, or some of them, seem to have proceeded on the principle that the acts of the trustee by which a liability was sought to be imposed upon the trust estate were not within the scope of the powers contemplated and conferred by the deed, or they were cases where the estate and the entire dominion over it for the purpose of the trust were placed in the trustee, and the beneficiaries had no right of interference and control in its management. In *Parmenter v. Barstow,* 22 R. I., 245, plaintiff, passing along the highway, had her eye injured by chips and pieces of stone flying in her face, and attributed to the negligence of defendant's "agents and servants," engaged in cutting and chiseling stone on the premises. The facts of this case are not given with sufficient fullness to enable us to consider it satisfactorily in reference to

the question presented here, but it does not appear in any report of the case to which we have access that the trustees were occupying the premises or carrying on the business indicated in furtherance of the trust, or that the beneficiaries had any direct interest in or control over it of any kind; and so, in *Falardeau v. Students' Association,* 182 Mass., 405, the entire interest in a lease on a building was assigned to trustees for the remainder of the term, and responsibility of the corporation, the assignor, for negligence of the employees and servants of the trustees in the management of the building was denied, because it appeared that the trustee had the entire and exclusive control of the property, and the employees could in no sense be considered the agents of the corporation.

But in our case the beneficiaries were parties to the deed; the operation of the road for their benefit was clearly contemplated, its expenses provided. for, and they were expressly given the right of interference and control in the main purpose of the trust, to-wit, the disposition of the lumber, etc.

Other decisions apparently adverse were rendered, on the ground that the claim was asserted in a court of law, and a recovery could not be made effective without threatening the integrity of the trust fund and the entire frustration of its chiefest purposes; but no such objection can obtain here, in a court having full jurisdiction of legal and equitable issues, and where a part of the trust fund is in the control and custody of the court and available in satisfaction of the claim.

We must not be understood as questioning in any way the position upheld in *Taylor v. Mayo,* 110 U. S., 163, and *Mitchell v. Whitlock,* 121 N. C., 166, to the effect that a trustee is personally bound for his contract or acts done in the management of the estate, unless it is otherwise expressly or clearly stipulated.

In *Mitchell v. Whitlock, supra,* the principle referred to is thus stated: "A trustee, purchasing goods or incurring any other liability, is personally liable for the payment thereof, unless his liability is limited by an agreement, expressed or implied, with the creditor."

In *Taylor's case, supra,* it appeared that Charles Davis, a retiring trustee, having a claim for fees and expenses, giving him a lien on the trust assets, turned over the fund to his successors, who gave him their written obligation, signed as trustees, that they would apply the funds of the estate in payment of his claim. as they came to hand. The estate having become insolvent and the assets exhausted in suit by the administratrix of Davis, the trustees were held individually liable, and the principle was

declared: "That if a trustee, contracting for the benefit of the trust, wants to protect himself from individual liability in the contract, he must stipulate, that he is not to be personally responsible, but that the other party is to look solely to the trustee."

But in neither of these cases was it held that the trust estate could not also be held responsible to the creditor, or that the defendants, the succeeding trustees, on payment of the demand, could not be reimbursed from the funds of the estate, if there had been such funds available for the purpose. And in the present case, no doubt, the defendant Morrow could have been sued and held liable as an individual, because the intestate was one of his employees; but responsibility also attaches to the trust estate, and will be imputed to the beneficiaries, who are parties to the deed and were allowed and took part in its actual management and control.

There is no merit in the other exceptions, and they were very properly not insisted on. The amendment allowed made no substantial change in the nature of the demand, and we have seen at the outset that our act as to fellow-servants applies to the defendant road and its lessees, operating the same, as well. Further, the declarations of a person, on a question of domicile, as to his intent in going to a given place, are always considered relevant, certainly when reasonably free from suspicion. 1 Greenleaf, 162c. And the charge of the court as to the burden of proof is in accord with our recent decisions on the subject. *Overcash v. Electric Co.,* 144 N. C., 576; *Stewart v. Railway,* 137 N. C., 687.

There is no reversible error shown, and the judgment below will be affirmed.

No error.