FISHERIES CO. et al. v. McCOY. (No. 5954.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 27, 1918. On Motion for Rehearing, April 10, 1918.)

**1. APPEAL AND ERROR ☞1062(2) — REFUSAL OF SPECIAL ISSUE—HARMLESS ERROR.**

An assignment that the court erred in refusing to add to the question whether plaintiff suffered any injuries the inquiry, "If so, which of said injuries did plaintiff suffer?" presents no error requiring reversal, the injuries being such that a jury would have been bound to make a general finding which would have precluded the court on appeal from holding the verdict excessive, and no issue having been framed particularly presenting question which defendants sought to have determined.

**2. APPEAL AND ERROR ☞1004(1)—EXCESSIVE VERDICT—REVERSAL.**

The rendition of a verdict so large that it shows on its face that it is the result of prejudice or passion constitutes error requiring a reversal, unless a suitable remittitur is entered.

**3. TRIAL ☞350(6)—SUBMISSION OF SPECIAL ISSUES.**

Since defendant does not have the privilege of requiring the jury to append to its verdict a list of injuries found to have been sustained, where a case for personal injuries is submitted on a charge calling for general verdict it cannot be said that such privilege is essential to the administration of justice.

**4. TRIAL ☞350(6)—SPECIAL ISSUES.**

In a personal injury suit, the court, as a general rule, is not required to submit a separate issue as to each injury.

**5. TRIAL ☞260(8) — GENERAL INSTRUCTIONS.**

Where charge given by court in suit by employé for injuries was correct, it was unnecessary to single out an issue relating to injuries and consequences resulting therefrom, as that could be done by counsel in argument.

**6. DAMAGES ☞216(1)—INSTRUCTIONS.**

Where charge as to measure of damages in personal injury suit by employé was correct, a special charge with reference thereto, which would merely have had effect of explaining that "reasonable probability" did not mean "mere possibility," was properly refused.

**7. APPEAL AND ERROR ☞215(1)—TIMELY EXCEPTIONS AND OBJECTIONS.**

Objections to charge not urged in trial court will not be heard on appeal.

**8. APPEAL AND ERROR ☞231(9)—GENERAL OBJECTIONS—AVAILABILITY ON APPEAL.**

An objection that charge is otherwise involved and uncertain, and gives the jury no clear direction by which to fix damages, is too general to be of any assistance to the trial court, and cannot be aided by making specific objections in the appellate court.

**9. TRIAL ☞251(8) — INSTRUCTIONS NOT APPLICABLE—REFUSAL.**

Refusal of an instruction not to include, in any amount found in answer to an issue, doctors' bills, etc., was proper, where such issue did not include such bills, the same being specifically inquired into in other issues.

**10. APPEAL AND ERROR ☞931(4)—JUDGMENT—PRESUMPTION.**

Although services of doctors were rendered at special instance and upon credit of employer, where no issue was requested as to whether plaintiff employé became liable therefor it will be presumed that court found to that effect, so that reasonable charges for such services were properly included in judgment, there being evidence that services were rendered with plaintiff's consent under circumstances raising an implied promise to pay.

**11. TRIAL ☞252(7)—SUBMISSION OF ALL ISSUES SUPPORTED BY EVIDENCE.**

Where negligence was shown beyond dispute, and defendants did not concede the same, thereby eliminating such issue, they cannot complain that instructions submitted too many issues, where the court submitted every issue as to negligence and there was evidence justifying their submission.

**12. MASTER AND SERVANT ☞100(1) — EXEMPTING FROM LIABILITY—VALIDITY.**

As the members and trustees of an unincorporated business, trust, or partnership cannot change their legal status so as to make themselves masters of employés in a representative capacity only, they cannot make a valid contract exempting themselves from individual liability for injuries to employés of the association.

**13. ASSOCIATIONS ☞19—UNINCORPORATED—INDIVIDUAL LIABILITY OF MEMBERS.**

Trustees and members of an unincorporated association may limit their liability as to some torts, and even relieve the trust estate as to some, since it is not contrary to public policy to stipulate against liability for negligence except where relation of master and servant or passenger and carrier exists.

**14. ASSOCIATIONS ☞16—UNINCORPORATED—INDIVIDUAL LIABILITY OF MEMBERS.**

In personal injury suit by employé against unincorporated association and two shareholders, who were trustees and managing officers, the court did not err in refusing to hold such members liable for such part only as would be arrived at by charging each with one-twelfth, there being 12 trustees, or by dividing the liability between all shareholders, such defendants being severally liable for the full amount.

On Motion for Rehearing.

**15. MASTER AND SERVANT ☞100(1) — CONTRACT EXEMPTING FROM LIABILITY—VALIDITY.**

The managing shareholders of an unincorporated association are the masters of the servants engaged therein, and may not absolve themselves of personal liability for breach of masters' duty toward such servants.

**16. TRUSTS ☞235 — CONTRACT EXEMPTING FROM LIABILITY—VALIDITY.**

The trustees of a trust estate operating as a business company are individually the masters of the servants engaged therein, and may not absolve themselves of personal liability for breach of masters' duty toward such servants.

Appeal from District Court, Aransas County; Morris Briggs, Special Judge.

Action by Gould C. McCoy against the Fisheries Company and others. Judgment for plaintiff, defendants appeal. Affirmed.

Terry, Cavin & Mills, of Galveston, E. P. Scott, of Corpus Christi, E. Gordon Gibson, of Rockport, and Williams & Neethe, of Galveston, for appellants. Kleberg & Stayton, of Corpus Christi, Dougherty & Dougherty, of Beeville, D. M. Picton, Jr., of Corpus Christi, and W. H. Baldwin, of Rockport, for appellee.

MOURSUND, J. Gould C. McCoy sued The Fisheries Company, J. W. Munn, and W. L. Moody, Jr., for damages for personal injuries suffered by appellee while in the service of The Fisheries Company. Munn and Moody, respectively president and secretary-treasurer of the company, and each a

trustee therein, were sued on the theory that they were personally liable because of the character of the company and their relations to it. The Fisheries Company pleaded a general demurrer and contributory negligence. Munn and Moody pleaded general denial, denied under oath the existence of any partnership, and by special plea set up the articles of association of The Fisheries Company providing that there should be no personal liability of the shareholders and trustees for any debts or damage incurred by the company, in connection with a written instrument executed by plaintiff in consideration of his employment by the company, in which he acknowledged notice of such provision for nonliability, and agreed to look to The Fisheries Company and its assets alone for satisfaction of any debts or damages incurred by it to him. Special exceptions to this plea were sustained, excluding it entirely, and upon answers of the jury to special issues judgment was rendered in favor of plaintiff against all of the defendants for $20,746. All of the defendants appealed.

[1] The first contention is that the court erred in refusing to add to the question whether plaintiff suffered any injuries the inquiry, "If so, which of said injuries did plaintiff suffer?" The proposition is to the effect that in the state of the evidence as to injuries suffered by plaintiff, and in view of the manner in which the cause was submitted in the charge, the defendants had the right to an affirmative statement by the jury of the injuries found, as requested by defendants and the refusal of such request was the denial of such right prejudicial to them. This proposition is very general. It leaves it to us to read the testimony and examine the charge, and to then deduce, if we can, a theory showing that defendants were prejudiced by the refusal of their request. We gather, however, from the argument that the theory relied upon by appellants is that it was important to their rights to have the jury state whether it found that plaintiff suffered a dislocation and curvature of the spine, in order that their findings as to the amount of damages could be reviewed. No authorities are cited in support of the assignment.

[2] The rendition of a verdict so large that it shows on its face to be the result of prejudice or passion constitutes error requiring a reversal of the judgment unless a suitable remittitur is entered. Does that fact entitle the defendant in a personal injury case to require that the jury name the different injuries they find plaintiff to have sustained? If so, as the consequences found to follow from injuries are frequently more important than the injuries, and the testimony more conflicting with regard thereto, would defendants also be entitled to have the jury state what consequences they find would follow from each injury, and would

it also be proper to have them state the amount of damages they allow for each injury? There may arise exceptional cases in which there is a sharp conflict as to whether or not an injury was sustained, which injury would be so important as an element of damages that if found to exist a large verdict would be permitted to stand, and if not found to exist only a small verdict would be justified. In such cases a very plausible argument could be made in favor of the propriety of submitting an issue inquiring whether such injury was found to have been suffered. Under our statute it is proper to submit such issues as, if answered favorably to plaintiff, will make out a case entitling him to a judgment. It is an issue whether plaintiff suffered injuries and what amount will compensate him for the injuries suffered. It may also be said that there is an issue as to each injury alleged and that is true, but to have the jury pass on each injury can serve no purpose except to furnish a basis for impeaching the verdict as to compensation allowed. If the jury found against plaintiff on certain injuries, they would be eliminated as a basis for the compensation allowed. Their finding as to each injury would be attacked as unsupported by evidence and if any one of such attacks was sustained, the finding as to compensation would fall, and in self-defense, under such a system, the plaintiff would probably be compelled to ask that each injury be valued separately.

[3] When a case is submitted on a charge calling for a general verdict, the defendant does not have the privilege of requiring the jury to append to its verdict a list of injuries they find to have been sustained, so it cannot be said that such privilege is really essential to the administration of justice.

[4] We believe it can be safely said that as a general rule the court is not required to submit a separate issue as to each injury, and we incline to the view that he would in no case be required to do so. But, even if it be held that under exceptional facts an issue should be submitted as to a particular injury, it would not be proper to attempt to get at the matter by asking the jury to describe all injuries found by them to have been suffered. In such cases an appropriate issue should be framed with regard to the particular injury in question. We have heretofore held that it was not error to refuse a request to have the jury name all injuries found to have been sustained. Andrews v. Wilding, 193 S. W. 192. As before stated there may be exceptional cases requiring a modification of the doctrine applied in that case; but in general we think such inquiries of very little value, and calculated to make the trial of cases on special issues so complicated and difficult as to destroy the value of the statute. In this case, while defendants, as before stated, were anxious to ascertain whether the jury found

plaintiff to have suffered a dislocation or curvature of the spine, they did not frame an issue pertinently presenting the question, but wanted to elicit from the jury a description of all injuries found to have been sustained by plaintiff. We have examined the facts, and conclude that, even if it were proper to submit such an issue, defendants were not harmed by the ruling of the court. Plaintiff, according to the undisputed testimony, suffered such permanent injuries to his arm and jaw, attended with great pain and suffering, as would have entitled him to a very large verdict. He also sustained injuries to his back from which he suffered considerable pain, and the jury would have been bound to have made a general finding at least with regard to such injuries, and had they made such a general finding we would not have known what consequence they found would follow such injuries, and would not have been able to hold the verdict excessive. The jury could not have done less, and we cannot assume that they would have taken the pains to state that they found no curvature of the spine and no dislocation of the vertebræ, even had they reached such a conclusion. Whether the jury described the injury in general terms or in technical language, in either event it would have been impossible to tell what consequences they thought would follow from the injury. The assignment, to say the least, presents no error requiring a reversal of the judgment, and it is overruled.

[5] By the second assignment complaint is made of the failure of the court to give the following special charge:

"That the burden of proof on the plaintiff, as stated in the other charge given you, means the greater weight and degree of evidence, and will govern you in determining whether or not the plaintiff sustained any particular injury, and whether or not any particular consequence resulted to him from any particular injury."

The charge given by the court was correct, and it was not necessary to single out the issue relating to injuries and the consequences resulting therefrom. This could be done by counsel in argument. The assignment is overruled.

[6] Complaint is also made of the refusal to give a special charge with regard to the measure of damages. The charge of the court on this subject was correct, and it was not necessary to explain the term "reasonable probability" by stating that thereby was not meant a "mere possibility." The special charge would merely have had that effect. The assignment is overruled.

The fourth assignment complains of the overruling of an objection to special issue No. 30, inquiring what sum of money will compensate plaintiff. The objection was that the special issue refers the jury to the plaintiff's petition, and is calculated to cause the jury to treat the allegations therein as evidence, and that said issue is otherwise involved and uncertain, and gives the jury no clear direction by which to fix damages.

The first proposition is that the charge is erroneous in referring the jury to the petition to ascertain the injuries alleged, because in so doing it imposes on the jury the duty and gives them the right to construe the pleading, and to determine what are injuries, and what injuries are alleged, and was calculated to cause the jury to treat the mere allegations as evidence.

[7] The entire proposition, with the exception of the last clause, constitutes objections to the charge not urged in the trial court, and need not be further considered. The objection, that such a reference is calculated to cause the jury to treat the allegations as evidence, is without merit.

[8] An objection that the charge is otherwise involved and uncertain, and gives the jury no clear direction by which they are to fix damages, is too general to be of any assistance to the trial court, and cannot be aided by making specific objections in the appellate court pointing out wherein it is considered misleading, as is sought to be done in the second and third propositions. The assignment is overruled.

[9] The fifth assignment complains of the refusal of an instruction not to include in any amount the jury might find in answer to issue No. 42 any doctor's bills, hospital fees, or other medical expenses, for the reason that plaintiff is shown not to have paid such bills nor to have become liable therefor. We fail to find any issue numbered 42, but presume reference to issue No. 30 was intended. That issue clearly stated what matters could be allowed for, and did not include doctor's bills or hospital fees, and, as such matters were specially inquired into in issues 31, 32, 33, and 34, the jury was in no danger of including the same in their estimate in answer to issue No. 30. The assignment is overruled.

[10] In answer to issues the jury found that $300 was a reasonable charge for the service of Dr. Caldwell; that $200 was a reasonable charge for the services of Dr. McCullough; that $50 was a reasonable charge for the services of Dr. Spohn; and $196 was a reasonable charge for expenses at the Spohn Sanitarium, and by the sixth assignment error is assigned to such ruling. The court included these items in his judgment, the contention being that there is no evidence that plaintiff paid or became liable for such sums, and the evidence shows that the services were rendered at the special instance and upon the credit of The Fisheries Company, and it was legally liable therefor to the persons rendering the same. As no issue was requested as to whether or not plaintiff became liable for the services, we must presume a finding by the court to that effect if there be any evidence on which it can be based. We find the evidence shows that plaintiff is liable on an implied contract to

pay such amounts. He was conscious when he was taken to the hospital, and the services were rendered with his consent and acquiescence, under circumstances raising an implied promise to pay the reasonable value thereof. The assignment is overruled.

Assignments 7 to 9, inclusive, complain that the amount of damages found in answer to special issue No. 30 is excessive. There is no merit in the contention.

[11] The tenth assignment reads as follows:

"The court erred in overruling the objection of all the defendants to the charge of the court upon the grounds that it was too lengthy, too involved, submitted too many issues, tended to confuse the case in the minds of the jury, and constantly and repeatedly presented to the minds of the jury, in argumentative form, plaintiff's theories and contentions, by putting to the jury pointedly and separately each one of plaintiff's contentions, and requiring a separate finding upon each one and upon each phase of each one, all as shown by defendant's bill of exceptions No. 1 to the charge."

The assignment is submitted as a proposition. In the argument it is stated that negligence was shown beyond dispute, and that the evidence raised no question of contributory negligence. This being the case, appellants could have conceded negligence, and thus limited the issues to those relating to injuries and amount of compensation. Instead, they conceded nothing, and the court submitted every issue relating to negligence. It is not contended that there was no evidence justifying the submission of the issues, and we cannot agree that the same were couched in argumentative form, or that defendants probably suffered injury because of the method adopted in submitting the case. The assignment is overruled.

[12] A separate brief is presented in behalf of Munn and Moody, in which error is assigned to ruling of the court with regard to matters relating to the personal liability of said two defendants. In order to show liability of Munn and Moody, plaintiff alleged:

"That on March 23, 1916, the plaintiff was an employé of defendants, and each of them, and the defendants, and each of them, were employers of plaintiff, and while on such date engaged in the regular course of his employment, as a result of the negligence of said employers and each of them, and their agents, servants, and employés, the plaintiff received the injuries, and has become entitled to recover the damages, hereinafter alleged; that plaintiff was at such time an employé of what was known as 'The Fisheries Company,' and he was an employé of said * * * individual defendants, who were, with others, principals in the operations hereinafter alleged, and were, with others, acting therein both personally and through their servants, agents, and employés, under the name also of 'The Fisheries Company,' being associated together as trustees, and in their collective capacity carrying on such operations, and as such having and exercising almost all the various powers of a corporation, and that they, with others, were authorized to and did carry on such operations and the business of such company in such collective capacity and under such name; that at such time the concern known as 'The Fisheries Company' was operating and organized as an unincorporated joint-stock association, and said three individual defendants were, with others, operating and carrying on such business and its incidents, associated together under the collective name of 'The Fisheries Company,' whose business and purpose was mainly the manufacturing, handling, and marketing of fish oil and fish scrap and all by-products from fish, and particularly from the fish known as the menhaden, for profit, and that preparations were then being made to engage extensively in such business; that the officers of such associated trustees in their collective capacity, or of such unincorporated joint-stock association, or of both, were at such time, and for some time prior thereto, the defendants J. W. Munn, W. L. Moody, Jr., and O. J. Delaney, who were, respectively, president, secretary and treasurer, and vice president and general manager, and whose authorities and duties as such were, among other things, those usually incident to such offices in the case of corporations, so far as applicable thereto; that each of such individual defendants was also at such time a member and shareholder of and in said unincorporated joint-stock association, whose powers, duties, and privileges, as such shareholders and members, were in general the holding of shares of stock therein, representing pro tanto the beneficial interest in the property involved in the concern, the right thereby to participate in the profits of the business, to attend annual and called meetings of the shareholders for the election of trustees and for the transaction of other business at such meetings, to have a vote and to share in the estate at dissolution; that each of said individual defendants was, moreover, a trustee of such concern, in whom and other trustees was vested the legal title to all of the property thereof, and who had the following powers and duties, among others: To absolutely hold, manage, control, and dispose of, subject to the articles of organization and to the by-laws of the association, the properties and business of the concern, to meet as a board monthly or upon call of the president or any of the trustees; to make, adopt, and amend by-laws, rules, and regulations not inconsistent with the articles of organization for the conduct of the business, themselves, and their agents, servants, and representatives; to elect officers and give them additional powers, to appoint agents for the conduct of the business, and to compensate themselves and the officers and agents; to issue certificates of shares; to wind up the business at its termination; to purchase, erect, own, lease, and operate factories, machinery, and any and all other equipment of any kind or nature, useful or convenient for use in the business aforesaid; to sell the products produced by the company; to deal in fish products, and to do any and all other matters and things directly or remotely connected with the business of the association."

Munn and Moody in their answer alleged that at the time plaintiff entered into the employment of The Fisheries Company he contracted in writing with such association that no one of its members or shareholders should be personally liable to him, and that for all debts or damages arising in any way in his favor against the association he would look alone to its property and assets, and that by reason of such agreement, and as part consideration of his employment, he waived any right to recover against defendants individually any damages occasioned by the injuries alleged in his petition. The contract made by plaintiff was set out, and is as follows:

"I hereby apply for employment to The Fisheries Company, which I know to be a joint-stock

association, whose members are not liable personally for any liability of said association incurred or to be incurred as stipulated in its articles of association or declaration of trust, of which I take full knowledge, and for all debts or damages arising in any way in my favor henceforth against said association I shall look alone to its property and assets."

It was then alleged that by the execution of said agreement plaintiff took full notice of the fact that The Fisheries Company was a joint-stock association, carrying on business under articles of association or declaration of trust, and the provisions of said articles or declaration of trust were incorporated in and became part of said agreement; that by paragraph 18 of said articles of association or declaration of trust it was provided at the time said agreement was made, and at the time plaintiff alleged he received the injuries, that—

"the funds and property of the association shall stand primarily charged with the burden of the payment of any claim or money demand established or existing on account of the operations and business of the association, whether founded on contract or tort; it being distinctly understood, agreed, and so declared that there shall not be any personal liability in any event upon the trustees or any of them, or any shareholder hereunder."

A copy of the articles of association or declaration of trust was attached to the answer as an exhibit. It is in the form of an agreement between three shareholders, who are described as having been duly elected as trustees, and the only other shareholder, in which it is provided that The Fisheries Company shall be a joint-stock association. The respective rights of the shareholders and of the trustees, and the method adopted for carrying on the business, are stated, in substance, in plaintiff's pleading above quoted, with the exception of the provisions relating to the liability of shareholders and trustees. These, in addition to the one quoted in stating the allegations of defendants' answer, are as follows: The trustees shall have no power to bind the shareholders personally, and persons dealing with the trustees shall look only to the funds and property of the association, and cannot hold the trustees or shareholders personally liable therefor; the stationery used by the trustees shall have printed thereon a statement that the company is a joint-stock association, without personal liability in any event of the trustees or shareholders, in accordance with its declaration of trust and by-laws, of which all persons dealing with it must take notice; that in engaging any employé the trustees shall advise him that the association is a joint association, without personal liability in any event of trustees or shareholders, and shall require him, before entering on his duties, to sign a statement to the effect that he recognizes such fact, and is fully advised of the existence and contents of the declaration of trust.

If the special answer stated a good defense, the court committed material error in striking it out. The trial court based his ruling on the theory that Munn and Moody were masters of McCoy, and that the principle which renders void, on the ground of public policy, all efforts on the part of the master, by previous contract, to screen himself from liability for negligence of himself or his employés to an employé, rendered invalid the contract with McCoy set up in the answer. Appellants concede the correctness of the principle relied on by the court, and, apparently, that it is of universal application, but contend that the principle cannot aid in determining who are masters, and that in this case Munn and Moody were not the masters of McCoy except in their capacity as trustees or partners, and that they did not contract against liability in such capacity. Before taking up and discussing the contention, we call attention to the fact that the appellants and appellee are not in accord on the question whether the agreement for the creation of The Fisheries Company brought into being a business trust or an association of such a character that the shareholders were partners. Both contend that a decision of that question is not necessary. Appellants believe it created a business trust, and argue that the shareholders did not as principals own or participate in the ownership of the property or of the profits to be derived from the business. As the shareholders are impliedly given the power to transact other business at the annual meetings than the election of trustees, and their right to a division of profits is not postponed to the termination of the business enterprise, and the right has not been vested in the trustees to determine when, and to what extent, profits will be divided, it appears to us that the cases relied on are based on considerably different facts, and The Fisheries Company should perhaps be held to constitute a partnership. Appellants, upon the theory that it is a trust, indulge in a plausible argument concerning the consequences of holding that trustees of large business enterprises and of educational and religious enterprises cannot relieve themselves of all personal liability. However, as they contend that members of ordinary partnerships, or joint-stock associations constituting partnerships, can relieve themselves from personal liability to the same extent and in the same manner as trustees, it is apparent that their contention does not rest upon any particular merit in trusts, or peculiar analogy between trustees and officers of corporations, receivers, executors, and administrators. We now come to the proposition upon which they must rely, namely, that trustees or partners can by contract sever their representative capacity from their individual capacity, so as

to make themselves masters of their employés only in a representative capacity. They rely upon the rule that trustees, and also partners, if the statement made in the case of Lumber Co. v. Pine Co., 31 Tex. Civ. App. 375, 72 S. W. 875, announces a correct rule, can by contract exempt themselves from personal liability growing out of contracts, and limit liability to the property and funds held by them for the trust or partnership estate. In this connection they contend that the same rule applies to liability for torts, but cite no case so holding. The case of Wright v. Caney River Co., 151 N. C. 529, 66 S. E. 588, 19 Ann. Cas. 384, is specially relied on in this connection. In that case the question decided was that the trust estate was liable for damages suffered by reason of death of an employé due to negligence. The court stated that it must not be understood as questioning in any way the position upheld in Taylor v. Davis, 110 U. S. 330, 4 Sup. Ct. 147, 28 L. Ed. 163, and Mitchell v. Whitlock, 121 N. C. 166, 28 S. E. 292, to the effect that a trustee is personally bound for his contract or acts done in the management of the estate, unless it is otherwise clearly stipulated.

[13] From this dictum appellants undertake to draw support not only for the proposition that trustees may limit their liability for torts generally, but even for the tort of negligence to an employé. No doubt they can limit their liability as to some torts, and even relieve the trust estate as to some; for it is not contrary to public policy to stipulate against liability for negligence except in certain relations, such as master and servant, and carrier and passenger.

The foregoing discussion is only intended for the purpose of showing the lack of authority on the question of the right to exempt from liability for torts. We shall take it for granted that there is a general rule that trustees and partners can, by previous contract, exempt themselves from personal liability for contracts and torts, and consider whether such a contract, when made with an employé for exemption from personal liability for negligence of other employés to him, has the effect of making the trustees or partners his masters only in their official or representative capacity and not as individuals. The question, we believe, resolves itself into whether trustees or partners can by contract alter the legal status which the law gives them, and such question must be answered in the negative. Under the law, trustees and partners are persons. They may describe themselves as trustees or partners in making contracts, and sign as trustees or partners, and yet it is their personal contract. They have no separate legal entity as trustees or partners. When they employ a person they are his masters. They may say in a contract with him that they are not his masters, and that the trust estate or partnership estate is his master; but property and funds cannot be his master. There must be persons, natural or artificial. In this case there is no corporation, so Munn and Moody were masters personally, regardless of how explicitly they might have expressed an intention to employ only in a representative capacity. They could not change their legal status by contract; but could they make a valid contract exempting themselves from personal liability for injuries suffered by an employé through the negligence of other employés? We gather from appellants' argument that the principle invalidating such agreements between master and servant is considered by them to be of universal application, and that if Munn and Moody were masters the principle applies to them. At the same time there are expressions from which it can be inferred that public policy does not require the enforcement of such principle when trustees are the masters. As the trust estate or partnership estate may be insufficient to furnish any guaranty of reasonable care to employés, and our statutes provide for corporations and limited partnerships under rules designed to protect those dealing therewith, we cannot conceive that the public policy would be different in the case of a business trust or partnership than it would be if the same business was owned and operated by an individual.

We conclude that the contract with McCoy constituted no defense to plaintiff's suit against Munn and Moody. This being the case, the court did not err in its ruling on the exceptions, nor in excluding the portions of the articles of association wherein it was undertaken to provide against personal liability, and admitting the rest for the purpose of showing the relations of Munn and Moody to The Fisheries Company. The excluded portions could not change or affect the relationship of Munn and Moody to the company, and, if we are correct in what we have held, could have served no purpose as evidence.

Appellants Munn and Moody contend the court erred in rendering personal judgment against them on the verdict, because there is no finding that either of them personally was the employer of appellee, or was guilty of any negligent act or omission which would make them, or either of them, responsible for the injuries sustained by appellee from negligence of employés of The Fisheries Company. The employés of The Fisheries Company were the employés of Munn and Moody, who were shareholders, trustees, and managing officers of the association. The jury's findings, which are not disputed, established that appellee's injuries were caused by many different acts of negligence, most of which consisted in the failure to furnish reasonably safe place and appliances for the work he was engaged in.

[14] Munn and Moody were severally liable

for the full amount of damages sustained by appellee, and the court did not err in refusing to hold them liable for such part as would be arrived at by charging each with one-twelfth, there being twelve trustees, or dividing the liability between all shareholders.

The judgment is affirmed.

### On Motion for Rehearing.

In the leading case of Taylor v. Mayo, Adm'x, 110 U. S. 330, 4 Sup. Ct. 147, 28 L. Ed. 163, the court said:

"When a trustee contracts as such, unless he is bound no one is bound, for he has no principal. The trust estate cannot promise; the contract is therefore the personal undertaking of the trustee."

[15] If the trustee designates himself as such, or signs as such, he is nevertheless bound personally. Elliott on Contracts, § 511. If the trust or partnership estate cannot promise, it cannot employ. The employment of McCoy was therefore the personal undertaking of the "trustees" of The Fisheries Company. If the trustees had signed a contract with McCoy stating that they, as trustees, employed him, or that The Fisheries Company employed him, it is clear they individually would, nevertheless, be the persons who entered into the relation of masters. A contract stating that McCoy agrees to the nonliability portions of the so-called trust agreement, and that he will look alone to the property and assets of The Fisheries Company for all debts and damages which may become due him, does not change the status of the trustees, who are still individually his masters, but undertakes to restrict their liability.

[16] Appellants Munn and Moody contend that as trustees or partners are permitted to contract so as to limit liability to the assets held by them as trustees or partners, when they make such a contract it is one in their representative capacity. They then say that, as they made that kind of a contract with McCoy, they became his masters only in a representative capacity, and therefore "there is no limitation of the liability of the only employer, the representative as such."

We consider this course of reasoning fallacious. In order to arrive at the conclusion that the trustees are masters in their representative capacity, and therefore "there is no limitation of the liability of the only employer, the representative as such," reliance is placed solely on the terms of the contract. But Munn and Moody cannot base their contention on the assumption that the very provision in dispute is valid. We believe that under the authorities, if the contract had merely provided that McCoy, in the collection of his salary or wages, would be limited to the assets of the trust or partnership estate, the trustees could not claim that they were released from personal liability for injuries suffered by reason of negligence. In other words, it is not a question of capacity in which the contract is made, but a question of limitation of liability. Such a contract does not change the status of the trustees or partners, but restricts their liability, provided the restriction is not invalid on account of being contrary to public policy. To say that a provision is a limitation of liability, and upon such proposition base a train of reasoning culminating in the final conclusion that such provision is not a limitation of the liability of the master, is assuming the validity of the provision in question for the purpose of proving its validity.

Munn and Moody were the masters of McCoy, and they made a contract absolving themselves from liability for injuries suffered by reason of negligence. To the extent that the contract so provided it is void, as contrary to public policy, unless there be some peculiar merit in trust or partnership enterprises, such as The Fisheries Company, which calls for the application of a different rule. Munn and Moody in their brief apparently take it for granted that, unless they can show that the provision of the contract relied on is not one limiting the liability of the masters, it will fall under the general rule and be invalid. In saying that the principle invalidating such contracts is considered by them to be of universal application, we made an unnecessary statement, and they protest that no rule of human origin can well be held to have universal application. We should have said that they appear to take it for granted in one portion of the argument that, if the contract was a limitation of the liability of the masters for negligence, it would be invalid under the general principle invalidating such contracts, but in another portion of the argument it is virtually contended that trust conducted enterprises or businesses have a peculiar merit or usefulness, from which argument it might be deduced that an exception to the general principle might well be permitted when the masters are conducting a trust business. It was in this connection, and not in answer to what we considered Munn and Moody's main contention, that we stated that as the law has provided methods for carrying on business enterprises by means of corporations and limited partnerships, so that persons can limit their risk to what they put into the business, we could not see that public policy would recognize any particular necessity for favoring persons electing to do business under The Fisheries Company plan above an individual who engages in the same business. We did not contend that such legislation prohibits the right to contract for immunity, but the fact that there is such legislation may, we think, with propriety be considered, if it be contended that there is any peculiar necessity for, or merit in, business enterprises, such as The Fisheries Company, which would call for a different public policy as to those associated together therein than it would as to one person engaged in a similar enterprise or business.

It is stated that what we said concerning the facts might be subject to the construction that McCoy's injuries were due to the personal fault of Munn and Moody. The evidence shows that neither of them undertook the supervision of the work of erecting the plant, and neither was present at the time McCoy was injured. The findings of the jury are supported by the evidence. We adopt them as our findings, and deem them sufficient to support the judgment against Munn and Moody.

The motion for rehearing is overruled.